## Allie Miller, Adm'x, etc., v. Robert L. Rendleman.

1. TRIALS—*By the Court Without a Jury—Force and Effect of the Finding.*—Where a jury is waived and the trial is by the court, and oral testimony is heard and there are some contested issues of fact and some conflicting evidence, the finding of the court as to the facts has the same force and effect as the verdict of a jury, and will not be disturbed by the Appellate Court, unless the finding is so manifestly against the weight of the evidence as to indicate partiality, prejudice, passion or mistake.

Assumpsit, on a certificate of deposit. Error to the Circuit Court of Union County; the Hon. ALONZO K. VICKERS, Judge, presiding. Heard in this court at the February term, 1901. Affirmed. Opinion filed September 4, 1901.

W. A. SCHWARTZ and W. W. BARR, attorneys for plaintiff in error.

HILEMAN & SESSIONS and JAMES LINGLE, attorneys for defendant in error.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was a suit in assumpsit, in the Circuit Court of Union County, commenced originally by appellee against Louis T. Linnell and Andrew J. Miller, partners, doing a banking business under the firm name and style of "Bank of Cobden," to recover on two certificates of deposit issued by said bank to appellee. Service was had on Miller alone, who appeared, pleaded to the action, joined in an agreement waiving a jury, and entered upon the trial of the case

by the court. After the evidence was heard and before the case was decided, Miller died. His death was suggested, and Allie Miller, the administratrix of his estate, was substituted as defendant, and thereafter the court found the issues for the plaintiff, (appellee,) and assessed his damages at the sum of $1,160.33, and rendered judgment thereon. Appellant duly excepted to the finding of the court, and interposed a motion for new trial, which the court overruled and rendered judgment on the finding. To the overruling of the motion for new trial and the rendering of judgment, appellant also duly excepted.

There were no "propositions of law" submitted to the court by either side, and the only grounds for new trial specified in the motion are, "that the judgment and holdings of the court are contrary to the law and the evidence." Omitting some slight complaint as to the relevancy of certain testimony, which we deem not of sufficient importance to require special discussion, the only question before us is, does the relevant and competent evidence in this record warrant the finding and judgment of the trial court.

The declaration consists of a special count against Louis T. Linnell and Andrew J. Miller as partners, doing a banking business under the firm name and style of Bank of Cobden, on two certificates of deposit issued to appellee for money deposited by him in the Bank of Cobden, and of the common counts. To this declaration Miller pleaded non-assumpsit; a plea verified by affidavit denying the execution of the certificates of deposit declared on, and a plea of set-off, as follows:

"And for a further plea in this behalf the said defendant, A. J. Miller, impleaded, etc., says that the plaintiff ought not to have his aforesaid action against him, the said defendant, because he says that the plaintiff was before and at the time of the commencement of this suit, and still is, indebted to the said firm of Linnell & Miller, doing business as bankers under the firm name of the "Bank of Cobden," and is still indebted to them in the sum of fifteen hundred dollars, for money before that time received by the plaintiff, for the use of the said Linnell & Miller, part-

ners, doing business under the firm name of the "Bank of Cobden," which said sum of money so due from the plaintiff to said defendants, Linnell & Miller, partners, doing business under the firm name of "Bank of Cobden," as aforesaid, exceeds the damage sustained by the plaintiff, by reason of the non-performance by said defendants of the several supposed promises in the said declaration mentioned, and out of which said sum of money the defendant is ready and hereby offers to set off and allow to the plaintiff the full amount of said damages. And this the defendant is ready to verify, whereof he prays judgment, etc."

Appellee put in evidence, articles of copartnership made and entered into on the 10th day of September, 1898, by and between said Louis T. Linnell and Andrew J. Miller. So much of this contract as we deem in any way pertinent to the issues in this case are the first, third, fifth, sixth, seventh, eighth, eleventh and the seventeenth paragraphs, which are:

" First. The business to be carried on by and between the above named persons as copartners shall be that of a general banking and fire insurance business."

" Third. The firm name and style of copartnership shall be Bank of Cobden, and in such firm name or in the name of Linnell & Miller shall the business of the copartnership be done, conducted and carried on."

" Fifth. The business done by said copartnership shall be that which is ordinarily and usually done by banks, not banks of issue, and shall be under the control of both members of the firm, who shall keep all proper books of account, which shall show fully and completely all transactions and business done by said bank or copartnership.

" Sixth. Said Louis T. Linnell shall be president and said Andrew J. Miller shall be vice-president.

" Seventh. The president shall discharge all duties which usually pertain to that position, but in no case shall he, by virtue of his position, have any authority in excess of that possessed by the other member of the firm. The president's salary shall be the same as the cashier in proportion to the time actually given to the service of the bank. He shall consult and advise with the vice-president before making loans of over one hundred dollars.

" Eighth. The cashier shall perform all the duties gen-

erally done and performed by cashiers of banks doing a like business. He shall annually furnish the members of the firm a full and complete statement of the financial condition of the bank. His salary shall be six hundred dollars per annum."

"Eleventh. The debts, overdrafts, or other dues from either partner to the bank or copartnership, shall not exceed three thousand dollars, provided, the bank or copartnership may loan to either partner upon the written consent of the other partner, such sums and upon such conditions and terms as are provided for general loans in section 12 hereof."

"Seventeenth. The shares and interests of the above named copartnership and of its business, all of which is shown by the books of the firm, are equal, each owning a one-half interest, and they shall share equally in the profits and losses."

The business of the copartnership entered into by this contract, commenced September 19, 1898, with E. A. Strong as cashier, who continued in that capacity until the firm ceased doing business. He testified as follows :

"I was cashier of the Bank of Cobden, February 22, 1899, and as such cashier I issued certificate marked 'Exhibit A,' and signed the firm name of Linnell & Miller to it. Rendleman gave me $1,000 in cash and I issued a certificate. The transaction was at the Bank of Cobden. The $1,000 went into the general fund. I was cashier of said bank March 1, 1899, and as such issued the certificate for $100 to Mr. Rendleman. For that certificate Mr. Rendleman paid me $100 in cash, which went into the funds of the bank. The Bank of Cobden, at the time I issued each of the cer. tificates, was composed of L. T. Linnell and A. J. Miller."

Cross-examination:

"I do not remember of any one being present when the certificates were issued, except Mr. Rendleman. Linnell or Miller was not present. Miller never knew of the transaction. He did business about one block north of the bank. He did not give the bank any attention. Rendleman said he did not make the potato deal as he expected, and put the money back in the bank. I heard the articles of copartnership read awhile ago."

Appellee testified in his own behalf :

"I am the plaintiff in this suit. The Bank of Cobden was

' closed at the time I brought this suit and has been closed ever since. I started to the Bank of Cobden to present this certificate for payment, and the door was closed just before I got there. The bank was closed March 2, 1899, and has not been opened since, so I could not present the certificate for payment. After the bank was closed and before the suit was brought, I saw a notice posted on the door of the bank, signed by A. J. Miller, that the bank was closed. No part of the certificate for $1,000 or the one for $100 has been paid."

Cross-examination:

" I never presented the certificates to Mr. Karraker, Mr. Linnell nor Mr. Miller. Never saw Mr. Miller about the bank, and Mr. Linnell was sick. Miller told me in his own store that all new business under the partnership would be paid. He said that he would pay them, that he would see they were paid dollar for dollar. He had reference to his own business. That was the business—the partnership business of the bank. Don't remember that I told him anything about how the money came to be put in the bank. Mr. Miller was not present when I put the money in the bank. I don't know that he knew anything about it. I presented these certificates to Mr. Miller in his store. He said he would pay every dollar of the new Bank of Cobden. I saw him afterwards. He did not pay or offer to pay these certificates."

Appellee put in evidence the two certificates of deposit proven and identified by the cashier, Strong, and himself. One of them is as follows:

" CERTIFICATE OF DEPOSIT.

COBDEN EXCHANGE BANK—L. T. LINNELL, BANKER.

COBDEN, ILL., Feb. 22, 1899.

$1,000.00.

Robert Rendleman has deposited in this bank one thousand dollars, payable to the order of himself on the return of this certificate, properly indorsed, with interest for even months at four per cent per annum if left six months.

LINNELL & MILLER,

No. 4784. Strong."

The other is identical with this, except that it bears date March 1, 1899, and is for $100.

This makes for appellee a complete and strong *prima*

*facie* case and puts the burden upon appellant to break it down or overthrow it.

Under whatever plea considered, and from every view point suggested, appellant's entire defense is based upon the contentions that $900 of the identical money for which the certificate of February 22, 1899, was issued, was money which the cashier of the bank had previously, wrongfully paid to appellee, out of partnership funds, in discharge of Linnell's individual indebtedness, and that therefore appellee did not acquire title to said money, and that his deposit of it in the "Bank of Cobden" was but the return of it to the partnership fund where it belonged, and that the cashier had, previous to the making of the deposits for which the two certificates were issued, wrongfully paid $1,020 out of the partnership funds to appellee, in discharge of Linnell's individual indebtedness, and that therefore appellee received and holds such money to and for the use of the firm of Linnell & Miller, and thereby became and is indebted to said firm to that amount. Appellant does not claim credit for both the $900 and the $1,020, but if the former contention shall prevail and the latter not, that then appellee's demand should be abated to the extent of $900. If, however, the latter contention or both shall prevail, then, that the sum of $1,020 should be set off and deducted from the amount of appellee's demand.

The evidence in this case shows that for a number of years prior to the formation of the copartnership between Linnell and Miller, they had both resided in the village of Cobden. Linnell had been and was conducting a bank, known as the "Cobden Exchange Bank," and Miller had been and was conducting a mercantile business, and Strong had been and was acting as cashier of the Cobden Exchange Bank. When the copartnership was entered into, Strong was retained by Linnell and Miller as cashier of the bank under the new name of "Bank of Cobden," and there was published to the public, in a local newspaper, the following notice:

" BANK OF COBDEN.

The undersigned have entered into a copartnership for the transaction of a general banking business to be carried on at Cobden, Illinois, under the firm name of Linnell & Miller; name of the bank to be ' Bank of Cobden.' The patronage of the public is solicited, which the proprietors hope, by fair treatment and close attention to business, to be able to secure. Mr. E. A. Strong will be retained as cashier.

L. T. LINNELL,<br>
A. J. MILLER."

Prior to and at the time of the admission of Miller as a partner, and the changing of the name of the bank, Linnell had a line of customers doing business with the Cobden Exchange Bank, some of them having deposits standing to their credit on the books of the bank, and some of them holding certificates of deposit, upon which the bank was paying interest. Appellee at that time held a certificate of deposit for $1,000, which had been running for some months. There was no interruption to the business of the bank at any time; the same cashier in charge as before, the same rooms were used as before, the same fixtures and furniture, the same books, the same stationery, the same checks and certificates of deposit, changed only by the stamping of the new name across the face, and such checks bearing the old name as were in the hands of customers were recognized by the bank under the new name without any change; the bank books were kept as before, with no completed footing up or finding of balances in the various accounts of the bank with its customers. All the assets of the bank as it was under the old name, remained and were used by the bank under its new name in its general banking business and dealings with the public, without discrimination; the liabilities of the bank under its old name and those under its new were paid out of the same general fund, and so far as the public knew, no kind of distinction was made as to such liabilities; customers were repeatedly told by Linnell and by the cashier that the bank was simply a continuation and was stronger than before, and one witness,

Rolla Moore, testified that about three weeks after the change he asked Miller if there was any difference in the bank since he went in, and that Miller replied, " Why, no; it is really the same thing; just a little change of name; that is all." This witness further testified : " I was a depositor there; had an open account; had money in the bank when Miller came in. I had a check book, drew checks as before, sent them to the bank; they were paid. I continued to make deposits as before." Miller denies that he made such statement to Moore, but the trial court evidently believed Moore and was warranted in doing so. The conduct at that time of every part of the business and of every person connected with it, including Miller, corroborates the theory that the fact was just as Moore testified that Miller stated it to be. As to all the foregoing, if Miller made any objections or protest he gave no notice of it to appellee or the public. True, Miller says he did not know anything about these things. He owned a half interest in the whole thing, was vice-president of the bank, resided in the immediate vicinity and was an experienced business man. The trial court was warranted in taking such statement with some grains of allowance. On one occasion Miller inquired of the cashier how Linnell's account stood, and on being informed that it was $5,000 overdrawn, he notified the cashier "not to pay or transfer any account, due-bill, check or certificate of deposit from the Cobden Exchange Bank to the Bank of Cobden without there is credit to the former bank;" but he neither gave appellee nor the public any notice of any kind, and the business continued to be transacted as before.

While the facts and conditions were as above stated, appellee, who held a certificate of deposit for $1,000, issued by the bank some months before the change of name, and when Linnell was sole proprietor, having an opportunity, as he thought, to use a large sum of money in connection with an anticipated deal for a lot of potatoes, went to the bank at 8:30 o'clock in the forenoon of February 22, 1899, and presented his certificate of deposit to the cashier, who

took it up and paid him $1,020 in cash, that sum being the face of the certificate with accrued interest. This money was paid out of the general funds of the bank, as had been the usual and customary course of business in like cases during all the time since the name of the bank was changed.

We are of opinion, under all the facts established by the evidence in this case, that the presentation and surrender of his certificate of deposit, and the payment of the money to him by the cashier, vested title to it in appellee, and further, that he did not receive, and does not hold it to and for the use of the firm of Linnell & Miller.

At 4:30 o'clock in the afternoon of the same day on which this money was paid to appellee, he having failed to consummate his anticipated deal for the potatoes, and having $900 of the same money still in his possession, added $100 of other money to it and took it all to the bank and presented it to the cashier for deposit. The money was accepted and a certificate of deposit for $1,000, signed "Linnell & Miller," issued to him, it being the larger of the two certificates sued on.

If we are correct in our conclusion as to the title to the money, after it was received by appellee, in payment for his surrendered certificate, and if we are correct in holding that he did not receive and does not hold it to and for the use of the copartnership of Linnell & Miller, it follows that neither the fact that he subsequently deposited a portion of this same money in the copartnership bank, nor the fact that such bank subsequently became indebted to him upon the deposit of this and other money, can strengthen appellant's position.

There are in this record some contested issues of fact and some conflicting evidence, but where a jury is waived and the trial is by court, and where oral testimony is heard, the finding of the court as to facts has the same force and effect as the verdict of a jury, and will not be disturbed by the Appellate Court, unless so manifestly against the weight of the evidence as to indicate partiality, prejudice, passion or mistake.

A number of propositions of law are suggested by the respective counsel, *pro* and *con*, and argued at some length; but as no "propositions of law" were submitted to the trial court for its holdings thereon, we do not feel called upon to discuss them.

We find no error in this record demanding a reversal of the case. The judgment of the Circuit Court is affirmed.